IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

VINCENT BLINCOE                                        CV. 06-998-PK
                    Plaintiff,

                                                       FINDINGS AND
v.                                                     RECOMMENDATION


WESTERN STATES CHIROPRACTIC
COLLEGE
                    Defendant.
_____

PAPAK, Magistrate Judge:

        Plaintiff Vincent Blincoe ("Blincoe") originally filed this action against defendant

Western States Chiropractic College ("WSCC") in the Multnomah County Circuit Court on May

31, 2006.  On July 14, 2006, WSCC removed Blincoe's action to this Court based on diversity

jurisdiction.  Now before this Court is WSSC's Motion to Strike [#35-1] and to Dismiss [#35-2].

        This Court has considered WSCC's motion, the pleadings on file, and oral argument from

both parties.  For the reasons set forth below, this Court recommends that WSCC's motion be

granted in part and denied in part.


Page 1 - FINDINGS AND RECOMMENDATION

## APPLICABLE LEGAL STANDARDS

### I.    Motion to Strike

Disposition of a motion to strike lies within the discretion of the district court. *See Federal Sav. & Loan Ins. Corp. v. Gemini Mgmt.*, 921 F.2d 241, 244 (9th Cir. 1990); *Talbot v. Robert Matthews Distrib. Co.*, 961 F.2d 654, 665 (7th Cir. 1992); *Alvarado Morales v. Digital Entm't Corp.*, 843 F.2d 613, 618 (1st Cir. 1988). However, courts disfavor and infrequently grant motions to strike. *Stabilisierungsfonds Fur Wein v. Kaiser Stuhl Wine Distribs. Pty., Ltd.*, 647 F.2d 200, 201 & n.1 (D.C. Cir. 1981); *Lunsford v. U.S.*, 570 F.2d 221, 229 (8th Cir. 1977). Absent a strong reason, "courts should not tamper with the pleadings". *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976) (citing *Nagler v. Admiral Corp.*, 248 F.2d 319, 325 (2d Cir. 1957)). When considering a motion to strike, courts accept the facts in the non-movant's pleading as true. *See, e.g., Kelly v. Kosuga*, 358 U.S. 516, 516 (1959). Courts construe the challenged pleading in the light most favorable to the non-movant and resolve any doubt against granting the motion. *See id.* at 553-54; *Nwachukwu v. Karl*, 216 F.R.D. 176, 178 (D.D.C. 2003); *Joe Hand Promotions, Inc. v. Nekos,* 18 F. Supp. 2d 214, 218 (N.D.N.Y.1998).

### II.    Motion to Dismiss

A court should dismiss a cause of action pursuant to Federal Rule of Civil Procedure 12(b)(6) only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Kahle v. Gonzales*, 474 F.3d 665, 667 (9th Cir. 2007) (citing *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)); *see also* Fed. R. Civ. P. 8(a). "In ruling on a 12(b)(6) motion, a court may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice."

Page 2 - FINDINGS AND RECOMMENDATION

*Swartz v. KPMG, LLP*, 476 F.3d 756, 763 (9th Cir. 2007). When considering a motion to dismiss, this Court accepts all allegations in the complaint as true and construes them in the light most favorable to the plaintiff. *See Kahle*, 474 F.3d at 667.

## FACTUAL BACKGROUND

WSCC is a domestic nonprofit corporation principally located in Multnomah County, Oregon. WSCC offers courses in chiropractic medicine and grants a graduate degree upon a student's completion of 397.5 course credits. Blincoe studied at WSCC from Winter 1999 until August 2002, when WSCC dismissed Blincoe from its rolls for his failure to pass a course called Bone Pathology IV Review ("BPIV").

Blincoe first enrolled in BPIV for the Fall 2001 term. Due to a family emergency, he missed the final exam and received a grade of incomplete. He again attended BPIV during the Winter 2002 term, but he did not take the exam. Blincoe again took BPIV in the Spring 2002 term and he completed, but did not pass, the final exam on August 6, 2002. His Spring 2002 BPIV instructor, Dr. Beverly Harger ("Harger"), proctored the exam. During the exam, Harger left the testing room without finding a substitute proctor. Blincoe spent part of the test period unsuccessfully searching for Harger to ask a question about the exam. Harger returned to the testing room when 15 minutes remained for Blincoe to complete the exam. Although open to interpretation, the pleading may suggest that Harger did not allow Blincoe to ask his question or to use his remaining 15 minutes. On August 8, 2002, WSCC refused to allow Blincoe to take his final exit exam because he had not passed BPIV. Although the pleading is not a model of clarity on this point, the parties now appear to agree that Blincoe asked Harger to regrade his exam and to credit fully the responses that he wrote on the back of one exam page. Harger apparently

Page 3 - FINDINGS AND RECOMMENDATION

granted Blincoe's request.

At some point after Harger re-graded Blincoe's BPIV exam, Blincoe alleges that Harger told him that he had passed the exam.  Blincoe asserts, and WSCC denies, that Harger agreed to change Blincoe's grade from incomplete to pass.  Harger subsequently disbanded the component x-rays of Blincoe's exam and discarded the original responses that Blincoe wrote on his copy of the exam.  Harger, however, retained a xeroxed copy of the front of the original exam's pages, but not the pages' reverses.  Harger left Blincoe's incomplete grade unchanged.

In August 2002, WSCC dismissed Blincoe from its rolls.  At the time of his dismissal, Blincoe had completed 395.5 of the 397.5 credit hours required to graduate.  Blincoe appealed his dismissal on or about September 24, 2002, and WSCC denied Blincoe a hearing for his appeal.  Subsequently in 2003, Blincoe passed his National Board of Chiropractic exams. However, he cannot work as a chiropractor without a degree from WSCC.

WSCC has moved (1) to strike as impertinent and immaterial the first clause from paragraph sixteen of the amended complaint; (2) to dismiss Blincoe's fraud claim for failure to state a claim and for failure to file the claim within the statute of limitations period; and (3) to dismiss Blincoe's intentional spoilation of evidence claim as unrecognized under Oregon law. For the reasons set forth below, this Court recommends the motion to strike be denied and the motions to dismiss be granted.

## DISCUSSION

**I.    Motion to Strike**

WSCC moves this Court to strike from paragraph 16 of the amended complaint the following phrase: "In 2003, [Blincoe] passed his National Board of Chiropractic exams."  WSCC

argues that the statement is impertinent and immaterial, and should therefore be stricken from the complaint. For the reasons set forth below, this Court disagrees.

### A.    Applicable Law

Federal Rule of Civil Procedure 12(f) governs a motion to strike:

> Upon motion made by a party before responding to a pleading or, if no responsive pleading is permitted by these rules, upon motion made by a party within 20 days after service of the pleading upon the party or upon the court's own initiative at any time, the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.

Fed. R. Civ. P. 12(f).

"Impertinent matter consists of statements that do not pertain, and are not necessary, to the issues in question." *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993) (quoting 5 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1382, at 711 (1990)) (quotations marks omitted).  An allegation is impertinent if a party could not introduce any trial evidence to support the allegation.  *E.g.*, *Lipsky*, 551 F.2d at 893; *Wailua Assocs. v. Aetna Cas. & Sur. Co.*, 183 F.R.D. 550, 553 (D. Haw. 1998) (citing 2A Moore's Federal Practice, ¶ 12.21[1]).  Similarly, "[i]mmaterial matter . . . has no essential or important relationship to the claim for relief or defenses being pleaded." *Fantasy*, 984 F.2d at 1527 (quoting Wright & Miller, *supra*, at 706-07)) (quotation marks omitted).  An allegation is immaterial if the allegation has "no possible bearing on the subject matter of the litigation." *Wailua*, 183 F.R.D. at 553-54 (citing *Hoeft v. Tucson Unified Sch. Dist.*, 967 F.2d 1298, 1301 (9th Cir. 1992)). The rationale behind granting a motion to strike is to "avoid ... prejudice to a party by preventing a jury from seeing the offensive matter or giving the allegation any unnecessary notoriety." *Wailua*, 183 F.R.D. 553 (quoting Wright and Miller, *supra*, at 715) (quotation marks omitted). Thus, a motion to strike is

"disfavored in the absence of prejudice." *Id.* at 555.

**B. Analysis**

_____ This Court cannot say that the challenged allegation is impertinent.  At trial, Blincoe may be allowed to introduce evidence about whether he would have practiced as a chiropractor but for WSCC's refusal to issue him a degree.  Likewise, Blincoe may be allowed to show when his damages from lost wages began to accrue.  Nor is the allegation immaterial.  Because the allegation may relate to the existence of or the magnitude of the Blincoe's damages, this Court cannot say the allegation has no bearing on the proceeding.

Equally fatal to WSCC's motion to strike is WSCC's failure to identify how the allegation's inclusion in Blincoe's pleading could prejudice WSCC.  There is no reason to expect that the allegation would confuse the average finder of fact.  Nor is the allegation's content likely to offend a finder of fact or to prevent the finder from fairly evaluating WSCC's arguments on their merits.  Unlike the challenged allegation in *Wailua,* which involved inflammatory rhetoric like "siege warfare," this allegation recites an unobjectionable fact.

This Court, therefore, recommends the denial of WSCC's motion to strike.

**II.    Motion to Dismiss Fraud Claim**

WSCC advances two distinct legal theories in support of its motion to dismiss Blincoe's fraud claim. WSCC argues (1) that Blincoe has not pled with particularity the essential elements of fraud, and (2) that the statute of limitations time-bars Blincoe's claim in fraud. Because this Court agrees with WSCC on both grounds, this Court recommends granting WSCC's motion to dismiss the fraud claim.

Page 6 - FINDINGS AND RECOMMENDATION

A.    **Failure to State a Claim**

1.    **Applicable Law**

When sitting in diversity, a district court applies the substantive law of its forum state.

*See Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). Oregon law requires that, in order to prevail

on a fraud claim, a plaintiff must prove nine elements: "(1) a representation; (2) its falsity; (3) its

materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it

should be acted on by the person and in the manner reasonably contemplated; (6) the hearer's

ignorance of its falsity; (7) his reliance on its truth; (8) his right to rely thereon; and (9) his

consequent and proximate injury." *E.g.*, *Webb v. Clark*, 546 P.2d 1078, 1080 (Or. 1976).  Some

decisions have criticized the *Webb* elements as overly fractionalized.  *See U.S. Nat. Bank of

Oregon v. Fought*, 630 P.2d 337, 349 (Or. 1981).  Consequently, a plaintiff does not need to

allege his ignorance of a statement's falsity when the plaintiff alleges reliance because ignorance

is a necessary component of reliance.  *Id.*  Materiality can be inferred from pleaded facts. *See id.*

Although a district court must apply the substantive law of its forum state, federal

procedural law requires that "in all averments of fraud or mistake, the circumstances constituting

fraud or mistake shall be stated with particularity."  Fed. R. Civ. Pro. 9(b).  "While a federal court

will examine state law to determine whether the elements of fraud have been pled sufficiently to

state a cause of action, the Rule 9(b) requirement that the circumstances of the fraud must be

stated with particularity is a federally imposed rule." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d

1097, 1103 (9th Cir. 2003).  "A pleading is sufficient under Rule 9(b) if it identifies the

circumstances constituting fraud so that the defendant can prepare an adequate answer from the

allegations." *Neubronner v. Milken,* 6 F.3d 666, 672 (9th Cir. 1993) (quoting *Gottreich v. San*

Page 7 - FINDINGS AND RECOMMENDATION

*Francisco Inv. Corp.*, 552 F.2d 866, 866 (9th Cir. 1977)) (quotation marks omitted).  Relevant circumstances include the "times, dates, places, benefits received, and other details of the alleged fraudulent activity." *Id.*

      **2.**     **Discussion**

      WSCC argues that Blincoe has failed to state his fraud claim with sufficient particularity to satisfy the requirement of Federal Rule of Civil Procedure 9(b). This Court disagrees, and believes Blincoe's pleading minimally satisfies Rule 9(b)'s particularity requirement.  First, Blincoe alleges the representation's content: "Dr. Harger represented to [Blincoe] that he had passed the [BPIV] exam and course and that she would see to change [Blincoe's] grade to passing." The representation's timing can be inferred from paragraph's 8, 12, and 15 of the amended complaint, and it lies between August 8, 2002 and September 24, 2002. Second, Blincoe alleges behavior which made the representation false: "Harger . . . refused to submit a passing grade." Third, Blincoe alleges generally that Harger's conduct was "willful." Thus the allegedly fraudulent circumstances are pled with sufficient particularity.

      WSCC further argues, and this Court agrees, that Blincoe's pleading fails to allege how Blincoe's reliance on Harger's promise consequently and proximately caused Blincoe's harm. Blincoe alleges that his damages arise from "his dismissal from Western States." WSCC, however, dismissed Blincoe "as a result of failing the BPIV exam."  Therefore, Blincoe's pleading establishes that neither Blincoe's dismissal or his subsequent damages were caused by reliance on Harger's alleged misrepresentation. Blincoe attempts to allege a causal connection between his dismissal and his damages: "[a]s a result of Harger's fraud and deceit, Blincoe has suffered loss of wages as a result of his dismissal from Western States," but an alleged legal

conclusion is not a material fact from which reliance can be inferred. *See Swartz v. KPMG, LLC*, 476 F.3d at 766. At oral argument, Blincoe suggested that he relied on Harger's promise throughout his appeal because he expected Harger to testify that he had passed BPIV. However, Blincoe could not rely upon Harger's promise throughout his appeal because Blincoe should have been aware of the falseness of Harger's representation when Blincoe learned of his dismissal from WSCC. Blincoe has committed himself to facts which cannot give rise to a pleading which contains all of the elements of fraud.

This Court recommends dismissing with prejudice Blincoe's claim in fraud.

**B.     Statute of Limitations**

**1.     Applicable Law**

Under Oregon law, the applicable limitations period for fraud is two years. *See* Or. Rev. Stat. 12.110(1) (West 2005). The limitations period does not begin to run, however, until "the plaintiff [knows] or should [know] of the alleged fraud." *Blackthorne v. Posner*, 883 F. Supp. 1443, 1455 (D. Or. 1995) (quoting *Mathies v. Hoeck*, 538 P.2d 1, 2-3 (Or. 1978)) (quotation marks omitted).

A plaintiff need not have constructive knowledge of every essential element of fraud for the limitations to begin to run; inquiry notice is sufficient. *See Mathies v. Hoeck*, 538 P.2d at 3 (quoting *Linebaugh v. Portland Mortgage Co.*, 239 P. 196, 200 (Or. 1925)). A plaintiff has inquiry notice if he knows there is a substantial possibility that each essential element is present. *See Gaston v. Parsons*, 864 P.2d 1319, 1324 & n.8 (Or. 1994) (interpreting "injury" within Or. Rev. Stat. § 12.110(4), though presumably similar analysis applies to "injury" within Or. Rev. Stat. § 12.110(1)); *Widing v. Schwabe*, 961 P.2d 889, 893-94 (Or. Ct. App. 1998), *construed in*

*Towne v. Robbins*, 339 F. Supp. 2d 1105, 1114 (D. Or. 2004) (quoting *Starr v. Dow Agrosciences, LLC*, 339 F. Supp. 2d 1097, 1104 (D. Or. 2004)). Phrased differently, a plaintiff possesses inquiry notice "[w]here circumstances are such as to suggest to a person of ordinary intelligence the probability that he has been defrauded." *Forest Grove Brickworks, Inc. v. Strikland*, 559 P.2d 502, 505 n.5 (Or. 1977) (quoting *Warner v. Republic Steel Corp.*, 103 F. Supp. 998 (S.D.N.Y. 1952)) (quotation marks omitted).

Once a plaintiff possesses inquiry notice, the limitations period commences if a reasonably diligent inquiry would disclose the fraud's commission. *Mathies*, 538 P.2d at 3 (citing *Wood v. Baker*, 217 Or. 279, 287 (1959)). To persuade a court to delay the commencement of the limitations period until after the alleged fraud's commission, a plaintiff must successfully "negative [his] lack of diligence and set forth the reasons why there was not an earlier discovery of the fraud." *Salem Sand & Gravel Co. v. City of Salem*, 492 P.2d 271, 275 (Or. 1971).

### 2.    Analysis

Blincoe possessed inquiry notice of the alleged fraud no later than September 2002. By that time, Blincoe admits to a phone conversation with a WSCC administrator where he learned that his failure to pass BPIV, unless remedied by a change of grade from incomplete to pass, would prevent him from taking WSCC's final exit exam. Following this conversation, Blincoe had Harger regrade his exam. At that time, Harger allegedly promised to change Blincoe's grade. Therefore, Blincoe necessarily knew of Harger's representation by no later than the re-grading. Blincoe's dismissal from WSCC shortly followed. Blincoe knew of his dismissal no later than when Blincoe filed his appeal on September 24, 2002. A reasonable person, when he learned of the dismissal, would be aware of a substantial possibility that Harger made a false promise with

Page 10 - FINDINGS AND RECOMMENDATION

an intent to deceive.  Awareness of a substantial possibility is sufficient for the limitations period

to commence even if Blincoe did not possess actual knowledge of Harger's intent to deceive until

Harger's May 2006 deposition.  Regardless, a plaintiff need not "discover whether the defendant's

act was intentional or negligent for the statute of limitations to begin to run" because the

limitations period does not delay commencement for a plaintiff to discover the proper legal

theory for suit.  *Gaston*, 864 P.2d at 1324. (referring to tortious conduct generally but not fraud

particularly).  If Blincoe relied upon Harger's promise and suffered from his reliance, then the

reliance and the suffering ceased when Blincoe possessed inquiry notice of the promise's

falsehood in September 2002.  Thus, Blincoe knew facts by September 2002 which would give

inquiry notice of fraud to a person of ordinary intelligence.  This Court next considers whether

reasonable diligence would have uncovered the fraud's commission.

      Blincoe does not attempt to explain why reasonable diligence would not have discovered

the fraud's commission.  Nor has Blincoe negatived his lack of diligence.  On the contrary,

Blincoe demonstrated somewhat lacking diligence by admitting at oral argument that he had not

communicated with Harger from his September 2002 exam until Harger's May 2006 deposition.

This communicative void is particularly non-diligent because it occurred while Blincoe was

relying upon the truthfulness of Harger's representation to successfully appeal his dismissal from

WSCC.

      Because Blincoe knew of or had inquiry notice of material facts indicating a substantial

possibility of each element of fraud, and because Blincoe has given this Court no reason why a

reasonably diligent inquiry would not have revealed any remaining material facts, the limitations

period commenced in September 2002. The limitations period expired before Blincoe amended

Page 11 - FINDINGS AND RECOMMENDATION

his complaint in March 2007 to include a claim in fraud. Assuming *arguendo* that Blincoe's

amendment relates back to Blincoe's original filing date of May 31, 2006, the statute of

limitations would still time-barr Blincoe's claim. Therefore, this Court recommends that

Blincoe's fraud claim be dismissed as time-barred by the statute of limitations.

    For the preceding reasons, this Court recommends dismissing with prejudice Blincoe's

fraud claim for failure to state a claim and as banned by the applicable statute of limitations.

**III.    Motion to Dismiss Intentional Spoliation of Evidence**

    WSCC argues, and this Court agrees, that Oregon law does not and would not recognize a

tort of intentional spoliation of evidence.

### A.    Applicable Law

    "In the absence of controlling forum state law, a federal court sitting in diversity must use

its own best judgment in predicting how the state's highest court would decide the case. In so

doing, a federal court may be aided by looking to well-reasoned decisions from other

jurisdictions." *Takahashi v. Loomis Armored Car Service*, 625 F.2d 314, 316 (9th Cir. 1980)

(citations omitted). An appellate court accepts the district court's determination of state law

unless the determination is clearly erroneous, "particularly where there has been no clear state

court exposition of a controlling principle." *Id.*; *see also Gee v. Tenneco, Inc.*, 615 F.2d 857, 861

(9th Cir. 1980); *American Timber & Trading Co. v. First Nat'l Bank*, 511 F.2d 980, 983 (9th Cir.

1973).

### B.    Analysis

    Oregon law does not recognize the tort of intentional spoliation of evidence by a party. In

*Fox v. Country Mut. Ins. Co.*, 7 P.3d 677, 690 n.10 (Or. Ct. App. 2000), the court recognized that

Alaska, among other jurisdictions, recognized a tort of intentional spoliation of evidence. *Fox* remained silent on whether Oregon law recognized a similar tort. *Id. Wihtol v. Lynn*, 146 P.3d 365, 367 (Or. Ct. App. 2006), subsequently described claims of intentional and negligent spoliation of evidence by a party as "novel." The court did not overturn the trial court's dismissal of the claims. Thus, the claims never received the tacit endorsement associated with actual litigation. By contrast, *Boden v. Ford Motor Co.*, 739 P.2d 1067, 1068 (Or. Ct. App. 1987), recognized that a third party could be held liable for the negligent destruction of evidence. *Boden* did not confront whether a party could be held liable for negligent spoliation. *Id.*. As non-Oregon courts have argued, the lack of evidentiary sanctions against a third party warrants recognition of third party spoilation even if party spoliation is unrecognized. *See Hibbits v. Sides*, 34 P.3d at 329 n.17 (citing *Oliver v. Stimson Lumber Co.*, 993 P.2d 11, 18 (Mont. 1999)).

Two reasons lead this Court to conclude that Oregon would not recognize a tort of intentional spoliation of evidence if confronted with the question. First, Oregon law does not support an analogy between a tort of prospective economic advantage and the tort of intentional spoliation of evidence. Oregon recognizes a tort of intentional interference with prospective economic advantage. *Allen v. Hall*, 974 P.2d 199, 202 (Or. 1999) Yet based on the most recent decision, Oregon does not recognize the outcome of civil litigation as a prospective economic advantage. *See Fox*, 7 P.3d at 689-91; *but see Boden,* 739 P.2d at 1068. A plaintiff is denied no prospective economic advantage if the destruction of evidence prohibits recovery through civil litigation. Spoliation thereby lacks a legally cognizable harm.

The absence of this analogy is particularly compelling because Alaska and California courts heavily analogized spoliation to loss of prospective economic advantage when they first

introduced spoliation as a tort.  *See Hazen v. Anchorage*, 718 P.2d 456, 463-64 (Alaska 1986); *Smith v. Superior Court*, 198 Cal. Rptr. 829, 832 (Ct. App. 1984), *rev'd by Cedars-Sinai Med.l Ctr. v. Superior Court*, 74 Cal. Rptr. 2d 248, 258 (1998) (*Cedars-Sinai* abolished intentional spoliation of evidence by a party to the suit, and it is currently good law).  Relying on similar reasoning, the courts classified a plaintiff's remedy in a civil action as a valuable expectancy. *E.g.*, *Hazen*, 718 P.2d, 463-63.  They reasoned that spoliation of evidence interfered with the plaintiff's ability to capitalize on his expectancies. *E.g.*, *id.*  Then by analogizing to the tort of intentional interference with prospective business advantage, the courts concluded that tort law protected the plaintiff's expectancies. *E.g.*, *id.*  The absence of a parallel analogy under Oregon law persuades this Court that an Oregon court would not recognize intentional spoliation of evidence.

Second, Oregon law has implicitly chosen non-tortious measures to remedy the intentional spoliation of evidence.  *See* Or. Rev. Stat. § 162.235 (West 2005) (intentional spoliation of evidence in a non-felony proceeding is a class A misdemeanor); Or. Rev. Stat. § 162.325 (West 2005) (intentional spoliation of evidence in a felony proceeding is a class C felony).  Spoliation also allows a jury to mistrust all evidence introduced by the spoliating party, *Whitney v. Canadian Bank of Commerce*, 374 P.2d 441, 442 (Or. 1962) (interpreting Or. Rev. Stat. § 17.250(7)), and to presume the spoiled evidence is adverse to the spoiling party. *Id.* (interpreting Or. Rev. Stat. § 41.360(5), (6)).  Oregon thereby allows for a court to repair the spoliation with well-crafted jury instructions.

The numerosity of Oregon's non-tortious penalties for spoliation suggests that fear of inadequate deterrence for spoliation would not motivate an Oregon court to recognize a tort of

Page 14 - FINDINGS AND RECOMMENDATION

intentional spoliation. *Hazen*, 718 P.2d at 463-4, adopted a tort of intentional spoliation partly

because Alaska law otherwise lacked legal remedies for the destruction of evidence. *Smith*, 198

Cal. Rptr. at 835, similarly adopted a tort of intentional spoliation because Cal. Penal Code § 135

did not adequately deter destruction of evidence. The penalty for violating § 135 was a

misdemeanor regardless of the importance of the evidence destroyed or of the seriousness of the

judicial proceeding to which the evidence was relevant. *Id.* By contrast, Oregon's penalty for

spoliation depends upon the kind of proceeding for which the evidence is relevant. *Compare* Or.

Rev. Stat. § 162.235 *with* Or. Rev. Stat. § 162.325. In addition, Oregon allows a jury to draw

adverse inferences from destroyed evidence. *See Whitney* 374 P.2d at 442. Oregon law,

therefore, strongly parallels the evidentiary sanctions upon which *Cedars-Sinai*, 954 P.2d 517

(citing Cal. Evid. Code § 413), relied to abolish intentional spoliation under California law.

The numerosity of Oregon's statutes dealing with intentional spoliation also evinces a

legislative intent to handle intentional spoliation through non-tortious penalties. *See supra*, at 14-

15. Admittedly, *Smith*, 198 Cal. Rptr. 834-35, rejected a similar argument regarding Cal. Pen.

Code. § 135. However, Oregon law contains significantly more statutory penalties than the

single statute considered in *Smith*, and the Oregon enacted the statutes comparatively recently.

*Compare* Or. Rev. Stat. § 162.235 (adopted 1981) *and* Or. Rev. Stat. § 162.325 (adopted 1971)

*with* Cal. Penal Code § 135 (adopted 1872). Therefore, this Court recommends dismissing with

prejudice Blincoe's claim of intentional spoliation of evidence.

## CONCLUSION

For the reasons set forth above, this Court recommends denying WSCC's Motion to

Strike [#35-1], and granting WSCC's Motion to Dismiss [#35-2]as to Blincoe's fraud and

intentional spoliation claims.

## SCHEDULING ORDER

The above Findings and Recommendation will be referred to a United States District Judge for review. Objections, if any, are due June 26, 2007. If no objections are filed, review of the Findings and Recommendation will go under advisement on that date. If objections are filed, a response to the objections is due fourteen days after the date the objections are filed and the review of the Findings and Recommendation will go under advisement on that date.

Dated this 12th day of June, 2007.

/s/ Paul Papak
Honorable Paul Papak
United States Magistrate Judge

Page 16 - FINDINGS AND RECOMMENDATION