IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

VINCENT BLINCOE,
        Plaintiff,

CV. 06-998-PK

FINDINGS,
RECOMMENDATION,
v.        AND ORDER

WESTERN STATES CHIROPRACTIC
COLLEGE,
        Defendant.

PAPAK, Magistrate Judge:

      In May 2006, plaintiff Vincent Blincoe filed this action in the Multnomah County Circuit Court against defendant Western States Chiropractic College ("Western States"), alleging breach of contract; specifically, Blincoe alleged Western States' breach of its contractual obligation to award Blincoe a degree in chiropractic medicine following his completion of various academic requirements. Blincoe sought both money damages and specific performance of the contract.

Page 1 - FINDINGS AND RECOMMENDATION

On July 14, 2006, Western States removed Blincoe's action to this court, on grounds of diversity jurisdiction.

On March 28, 2007, Blincoe filed an amended complaint (#33) alleging, in addition to his breach of contract claim, Western States' fraud and intentional spoliation of evidence. On June 12, 2007, this court recommended granting Western States' motion to dismiss the two new claims (#35), and on July 16, 2007, Judge Mosman adopted this court's findings and recommendation without modification. Thus, the only claim remaining in this action is the originally filed breach of contract claim.

Western States now seeks summary judgment as to Blincoe's remaining claim for breach of contract. Western States argues that this court lacks subject matter jurisdiction over Blincoe's claim because the exclusive remedy for Blincoe's alleged harm is Oregon's statutory writ of review. Western States further argues that an educational institution can only breach its contract with a student in failing to award a degree if its decision not to confer the degree is arbitrary and capricious, and that as a matter of law the evidence in the record precludes this court from making any such finding. Finally, in the alternative, Western States requests partial summary judgment as to Blincoe's prayer for specific performance, on the grounds that specific performance is unavailable to compel the grant of an educational degree.

In addition, Western States moves to strike (#60) Blincoe's Supplemental Concise Statement of Material Facts (#54) as overlong, in violation of Local Rule 56.1.

This court has considered Western States' motions (#49, 60), the pleadings on file, and oral argument on behalf of both parties. For the reasons set forth below, this court recommends that Western States' motion for summary judgment be denied. This court further recommends

Page 2 - FINDINGS AND RECOMMENDATION

that Western States' alternative motion for partial summary judgment be granted as to Blincoe's prayer for injunctive relief requiring Western States to award Blincoe a doctorate of chiropractic medicine, and in all other respects denied.  Finally, in the interests of promoting judicial economy, this court grants Blincoe leave *nunc pro tunc* to file an overlong concise statement of material facts and, based thereon, denies Western States' motion to strike as moot.

## LEGAL STANDARDS

**I.      Summary Judgment**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  Summary judgment is not proper if material factual issues exist for trial.  *See*, *e.g.*, *Celotex Corp. v. Catrett*, 477 U.S. 318, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995), *cert. denied*, 116 S.Ct. 1261 (1996).  In evaluating a motion for summary judgment, the district courts of the United States must draw all reasonable inferences in favor of the nonmoving party, and may neither make credibility determinations nor perform any weighing of the evidence.  *See*, *e.g.*, *Lytle v. Household Mfg., Inc.*, 494 U.S. 545, 554-55 (1990); *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000).

The Supreme Court's clear prohibition against credibility determinations and weighing of evidence in the course of summary judgment proceedings  precludes the trial court from usurping the province of the factfinder by disregarding direct evidence produced by the nonmoving party, regardless of whether that evidence is inherently implausible or in conflict

with other, more trustworthy evidence.  *See T.W. Electrical Service, Inc. v. Pacific Electrical Contractors Asso.*, 809 F.2d 626, 630-631 (9th Cir. 1987).  The sole exception to this rule occurs where a party's affidavit submitted in opposition to summary judgment flatly contradicts that same party's prior sworn testimony:  under that circumstance only, the party's "sham affidavit" may be disregarded.  *See Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991).  The sham affidavit rule is to be applied with all due caution.  *See id.*

## II.     Motion to Strike

The disposition of a motion to strike is within the discretion of the district court.  *See Federal Sav. & Loan Ins. Corp. v. Gemini Management*, 921 F.2d 241, 244 (9th Cir. 1990).  Motions to strike are disfavored and infrequently granted.  *See Stabilisierungsfonds Fur Wein v. Kaiser, Stuhl Wind Distribs. Pty., Ltd.*, 647 F.2d 200, 201, 201 n.1 (D.C. Cir. 1981); *Pease & Curren Refining, Inc. v. Spectrolab, Inc.*, 744 F. Supp. 945, 947 (C.D. Cal. 1990), *abrogated on other grounds by Stanton Road Ass'n v. Lohrey Enters.*, 984 F.2d 1015 (9th Cir. 1993).

## FACTUAL BACKGROUND

Western States is an accredited, private college that awards a doctorate of chiropractic medicine to its students who complete specified academic requirements, which include 397.5 credits of coursework and a two-part objective structured competency examination referred to as the "OSCE."  Western States' students sit for the first part of the OSCE following completion of their eighth quarter of coursework, and the second part, taken after completion of all coursework, serves as an exit examination.  Western States' students are permitted to sit for the second part of the OSCE three times without penalty, but if a student fails the exit exam three times, he or she is required to undergo not less than one year's academic suspension, during which time the

student must complete specified remedial work, before the student is permitted to sit for the exam a fourth time.

A Western States student may be dismissed from the school's rolls if the student's cumulative grade point average falls below 2.0, or if the student achieves less than a 2.0 grade point average in three different quarters. Dismissed students are permitted to submit a written request for a formal hearing to challenge their dismissal, but Western States' written policies do not provide students an absolute right to such a hearing.

Blincoe began a course of study at Western States in January 1999. In the fall quarter of that year he achieved less than a 2.0 grade point average and, in consequence, was placed on academic probation. In the spring quarter of 2000 he again achieved less than a 2.0 grade point average, and was placed on permanent academic probation. Pursuant to Western States' written policies, if Blincoe received less than a 2.0 grade point average in any subsequent quarter, he would be subject to dismissal and would become ineligible to receive a degree in chiropractic medicine from Western States.

In the fall quarter of 2001, among the courses for which Blincoe enrolled was Bone Pathology IV ("BP IV"), a two-credit class taught by Professor Beverly Harger, Department Chair of Radiology for Western States. Blincoe finished all of his fall 2001 courses except BP IV, for which he missed the final exam and received a grade of "incomplete." Subsequently, following his eighth quarter of coursework, Blincoe sat for and failed the first portion of the OSCE on five separate occasions before successfully passing the exam on his sixth attempt.

Blincoe attended BP IV a second time in winter 2002, but again failed to sit for the final exam; his incomplete grade in BP IV therefore remained unchanged. Blincoe enrolled in BP IV

Page 5 - FINDINGS AND RECOMMENDATION

for a third time in the spring quarter of 2002, but did not take the final exam at the regularly scheduled time, apparently due to Dr. Harger's vacation plans.

Other than the final exam for BP IV, Blincoe finished all of his required coursework for the chiropractic medicine degree by the end of the 2002 spring quarter, with a grade point average in excess of 2.0. Despite having completed only 395.5 of his required 397.5 credits, Blincoe was permitted to sit for the second part of the OSCE, which he failed three times. Although, according to Western States' written policies, failing the exit examination three times would normally have resulted in one year of mandatory academic suspension and remedial coursework, Blincoe requested and received permission to sit for the exam a fourth time, on the condition that he successfully complete the BP IV final examination on or before August 9, 2002.

On August 6, 2002, Blincoe sat for the BP IV final exam, with Dr. Harger acting as proctor. Blincoe was the only student taking the exam at that time.

The facts are disputed as to Dr. Harger's administration of the exam. Blincoe asserts that Dr. Harger left the exam room early in the exam period, was absent for 60-70% of the time allotted for the exam, and returned only just in time to collect Blincoe's exam responses when the allotted time was complete. Dr. Harger asserts that she returned "periodically" to check on Blincoe over the course of the testing period. Interpreting the evidence in the record in the light most favorable to Blincoe, this court finds, for summary judgment purposes only, that Dr. Harger left the exam room after the exam began, and remained absent for the majority of the testing period.

Had Dr. Harger been present for a greater portion of the testing period, Blincoe asserts

Page 6 - FINDINGS AND RECOMMENDATION

that he would have availed himself of the opportunity to ask clarifying questions about the exam. Apparently in consequence of Dr. Harger's unavailability for questions, Blincoe only partially completed[1] some exam questions.

There is further dispute as to whether the test papers provided to Blincoe contained a bonus question (or questions) regarding biomechanical instability that Dr. Harger previously indicated would be included on the exam. Blincoe's deposition testimony at 122:11-25, 127:12-20, was that there were ten bonus questions, and that he answered all of the questions. In oral argument, Blincoe's counsel argued that he was entitled to ten bonus points for his correct answers to the bonus questions, and that he did not receive credit for them. By contrast, Dr. Harger testified in deposition, at 34:17 - 35:12, that there was one single bonus question worth one point only, and further that Blincoe failed to answer the question correctly (although he did provide an answer to it). Dr. Harger testified that Blincoe wrote down the bonus question correctly before attempting to answer it.

Neither party disputes that Blincoe's answer to the bonus questions was written on the back of the last page of the exam, and that on the front side of the last page Blincoe wrote "Bonus question" (in the singular) alongside an arrow indicating that the answer appeared on the other face of the page. Neither party retained a copy of the back side of the last page of the exam response.

This court notes that Blincoe's testimony is at odds with his own contemporaneous

---

[1] Although at oral argument Blincoe's counsel suggested that he left some questions entirely unanswered in consequence of Dr. Harger's absence, in a letter to Western States dated September 24, 2002, Blincoe stated that some of his answers had been "only partially completed" rather than that they were left blank. Moreover, in his deposition testimony at 131:2-6, Blincoe conceded that he had provided an answer to every question.

Page 7 - FINDINGS AND RECOMMENDATION

notation on the exam. Nevertheless, interpreting the evidence in the light most favorable to Blincoe, this court finds, for summary judgment purposes only, that the exam might have contained up to ten bonus questions, and that Blincoe may have answered some or all of these questions correctly.

It is undisputed that Dr. Harger gave Blincoe no credit for his response to the bonus question or questions, and gave him 67 out of a possible 105 points on the exam proper. Blincoe needed 70% of the available points to pass, whereas 67/105 constitutes a score of 63.8%, a failing grade.

Blincoe subsequently met with Western States' Dean of Academic Affairs, Lester Lamm, who informed him that his failing grade in BP IV had resulted in a grade point average less than 2.0 for the fall quarter of 2001. Because Western States' written policies mandate dismissal for students whose grade point averages fall below 2.0 in three different quarters, Lamm advised Blincoe that he would not be permitted to sit a fourth time for the exit examination unless Dr. Harger changed his grade for BP IV.

Blincoe met with Dr. Harger on August 8, 2002. The parties dispute the substance of the meeting. Blincoe testified in deposition at 127:12 - 131:14 that Dr. Harger permitted him to supplement his prior answers, in writing, following which Dr. Harger regraded his exam and told him he passed. He further testified that Dr. Harger promised to "see what she can do about changing the grade." By contrast, in his letter to Western States dated September 24, 2002, Blincoe stated that he "re-took the exam orally," and, under those circumstances, was able to "pass[] this unofficial test." In that letter, which constituted an appeal of his dismissal from Western States, Blincoe did not suggest that Dr. Harger ever promised to change his grade. To

Page 8 - FINDINGS AND RECOMMENDATION

the contrary, the gravamen of the letter was that his oral performance on the unofficial exam should be taken to suggest that he could have passed the exam had the conditions of its administration been more favorable to Blincoe.

Dr. Harger's deposition testimony at 35:17 - 38:4 was that the purpose of the August 8, 2002, meeting was merely to review the exam, and that Blincoe did not ask for the exam to be regraded.

This court notes that Blincoe's deposition testimony is at odds with his statements in his appeal letter, which was written closer in time to the events in question, and under circumstances providing a strong motive for stating every possible ground for effecting a change in his BP IV grade. Nevertheless, interpreting the evidence in the light most favorable to Blincoe, this court finds, for summary judgment purposes only, that Dr. Harger agreed that Blincoe's performance during the August 8, 2002, meeting demonstrated expertise consistent with achieving a passing grade on the BP IV exam, and agreed to "see what she c[ould] do" about changing Blincoe's grade.

The parties do not dispute that Dr. Harger nevertheless left Blincoe's BP IV grade unmodified. In consequence, Blincoe was not permitted to sit for the exit examination a fourth time, and instead was dismissed from Western States' rolls.

Despite his failure to complete Western States' program and receive a degree, Blincoe sat for and passed the national chiropractic board examinations. Thus, but for his dismissal from Western States, Blincoe could have entered the practice of medicine as a chiropractor.[2]

---

[2]This finding does not require the conclusion that, if Blincoe's dismissal is ultimately determined to have been wrongful, Blincoe will be entitled to the money damages he seeks for lost earnings he would have received in the practice of chiropractic medicine. Even in the event

Page 9 - FINDINGS AND RECOMMENDATION

As indicated above, on September 24, 2002, Blincoe wrote a letter constituting an appeal of his dismissal. His letter did not request a formal hearing, nor did Western States' policies provide a right to one in connection with academic disputes. In response, Western States formed a committee to discuss Blincoe's grounds for appeal, but there is no record of the deliberations of that committee. On October 7, 2002, Western States informed Blincoe that his appeal was denied.

In September 2004, Blincoe applied for readmission to Western States. On October 24, 2004, Western States offered to readmit Blincoe for the purpose of awarding him a degree in chiropractic medicine, on the conditions that he retake BP IV and pass its final exam, and that he pass the exit examination on his first post-readmission attempt to do so. Blincoe declined this offer and requested a hearing. Western States formed a committee to discuss whether the terms of the offer of readmission could be modified, but did not otherwise respond to Blincoe's request. Western States ultimately determined that it could not modify the terms of the readmission offer, and did not grant Blincoe an opportunity for a hearing on the matter.

This breach of contract action followed. Blincoe specifically alleges that Western States breached contractual terms of its student enrollment agreement with Blincoe by (i) failing to provide a proctor for the entirety of the BP IV final exam, (ii) failing to credit Blincoe with a passing grade for BP IV, (iii) dismissing Blincoe from Western States' rolls without permitting

---

that Blincoe were to prevail on his breach of contract claim, his entitlement to money damages would remain highly speculative. Had Blincoe received a passing grade on the BP IV final exam, he would still have been required to sit for the second portion of the OSCE before receiving a degree from Western States. Having already failed that exam on three occasions (and having required six attempts to pass the first portion of the OSCE), Blincoe's successful completion of Western States' academic requirements cannot be characterized as a certainty.

Page 10 - FINDINGS AND RECOMMENDATION

him to sit for the exit examination a fourth time, (iv) dismissing Blincoe from Western States' rolls without permitting him to sit for the BP IV final examination a second time, (v) failing to provide Blincoe a hearing in connection with his appeal of his dismissal, and (vi) failing to award Blincoe a degree in chiropractic medicine. *See* Amended Complaint, ¶ 19.

## ANALYSIS

When sitting in diversity, a district court applies the substantive law of its forum state. *See Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *see also*, *e.g.*, *Takahashi v. Loomis Armored Car Service*, 625 F.2d 314, 316 (9th Cir. 1980).

**I.      Subject Matter Jurisdiction**

Western States' primary argument in support of summary judgment is that this court lacks subject matter jurisdiction to consider Blincoe's claims, on the ground that the writ of review procedure codified at ORS 34.010 to 34.102 provides the exclusive remedy available to a plaintiff challenging an educational institution's decision not to award a degree. For the reasons that follow, this court disagrees.

ORS 34.020 provides, in relevant part, that "any party to any process or proceeding before or by any inferior court, officer, or tribunal may have the decision or determination thereof reviewed for errors, as provided in ORS 34.010 to 34.100, and not otherwise." ORS 34.020. ORS 34.040 specifies that:

> The writ shall be allowed in all cases in which a substantial interest of a plaintiff has been injured and an inferior court including an officer or tribunal other than an agency as defined in ORS 183.310 (1) in the exercise of judicial or quasi-judicial functions appears to have:
>
>     (a) Exceeded its jurisdiction;
>
>     (b) Failed to follow the procedure applicable to the matter before it;

Page 11 - FINDINGS AND RECOMMENDATION

>   (c) Made a finding or order not supported by substantial evidence in the whole record;
>
>   (d) Improperly construed the applicable law; or
>
>   (e) Rendered a decision that is unconstitutional.

ORS 34.040(1).  Thus, the statutory writ of review procedure is available to appeal the decisions of tribunals exercising quasi-judicial functions.

Western States cites *Tate v. North Pacific College*, 70 Or. 160 (1914), for the proposition that the writ of review procedure was available to Blincoe in connection with Western States' decision not to confer the chiropractic medicine degree.  The *Tate* court held that:

> The faculties of colleges, who are authorized to examine their students and pass on the question whether the students have performed all the conditions prescribed, to entitle them to degrees, **exercise *quasi*-judicial functions**, and their decisions are conclusive, if they act within their jurisdiction, and in good faith, and not arbitrarily.

*Tate*, 70 Or. at 167 (italicized emphasis original; bolded emphasis supplied).

This court need not determine whether any action by Western States constituted the exercise of a quasi-judicial function by a tribunal of any kind, thus triggering a right to writ of review.  The decisions of the Oregon courts make clear that "[t]he writ-of-review statutes do not . . . serve to abolish established common law remedies," but rather provide an avenue for appeal of judicial or quasi-judicial decisions not otherwise subject to review in a court of law.  *Cloyd v. Lebanon Sch. Dist. 16C*, 161 Or. App. 572, 578 (1999).  The rule distilled by the courts is that:

> Where an action seeks to enforce rights that arise from the terms of a contract, rather than from an extra-contractual source * * * , the action may be brought in contract, *even though it might otherwise also be able to be brought in a writ of review proceeding*.

*Spivak v. Marriott*, 213 Or. App. 1, 13-14 (2007) (emphasis original), *quoting Cloyd*, 161 Or.

Page 12 - FINDINGS AND RECOMMENDATION

App. at 578; *see also*, *e.g.*, *Maddox v. Clackamas County School Dist.*, 293 Or. 27, 33 (1982) ("Those interests of the parties which exist by virtue of contract . . . may be protected by contract remedies"); *Pangle v. Bend-Lapine School Dist.*, 169 Or. App. 376, 384-85 (2000) (specifying that writ of review provides an exclusive remedy only in the absence of any "specific statutory or a common-law remedy . . . for which there is jurisdiction over the cause").

Here, Blincoe does not seek appellate review of Western States' arguably quasi-judicial decision not to confer on him a degree in chiropractic medicine, but rather sues for damages and specific performance in connection with Western States' alleged breach of its contractual obligations to him. It is clearly within this court's diversity jurisdiction to consider Blincoe's claim sounding in contract law. This court therefore recommends that Western States' motion for summary judgment on the basis of lack of subject matter jurisdiction be denied.

## II.   Breach of Contract

Western States further argues that Blincoe's breach of contract action fails on the merits as a matter of law, in that Blincoe cannot establish that Western States' decision not to award a degree was arbitrary or capricious[3]. For the reasons that follow, this court disagrees.

In *Tate*, *supra*, the Oregon Supreme Court quoted with approval an 1891 decision of the

---

[3]Western States does not assert or otherwise develop the argument that Blincoe has failed to assert the elements of a claim for breach of contract. This court notes that the evidence in the record may raise a question as to whether Blincoe's allegations, interpreted in the light most favorable to him, suggest that the contract between Blincoe and Western States was ever breached: for example, the record is void of evidence or argument that Blincoe enjoyed a contractual right to a proctor for the entirety of the BP IV final exam, a contractual right to a passing grade in BP IV, or a contractual right to a hearing in connection with his dismissal. Moreover, the evidence in the record may support the theory that Blincoe's dismissal and Western States' refusal to confer a degree occurred pursuant to, rather than in breach of, the contract between the parties. However, this court will not recommend summary judgment *sua sponte* in the absence of a fully developed record on these issues.

Page 13 - FINDINGS AND RECOMMENDATION

Supreme Court of New York as follows:

> The circulars of the respondent indicate the terms upon which students will be received, and the rights which they were to acquire by reason of their compliance with the rules and regulations of the college in respect to qualifications, conduct, etc.  When a student matriculates under such circumstances, it is a contract between the college and himself that, if he complies with the terms therein prescribed, he shall have the degree, which is the end to be obtained.  This [educational institution] cannot take the money of a student, allow him to remain and waste his time (because it would be a waste of time if he cannot get a degree), and then *arbitrarily* refuse, when he has completed his term of study, to confer upon him that which they have promised, namely, the degree of doctor of medicine which authorizes him to practice that so-called science.  It may be true that this court will not review the discretion of the corporation in the refusal, for any reason or cause, to permit a student to be examined and receive a degree; but where there is an absolute and arbitrary refusal, there is no exercise of discretion.

*Tate*, 70 Or. at 165-166 (emphasis original), *quoting People ex rel. Cecil v. Bellevue Hospital Medical College*, 14 N.Y.S. 490 (1891).  The *Tate* court further specified that "[i]n the absence of proof of bad faith, or misconduct or arbitrary action, on the part of the faculty, the[] decisions [of an educational institution] cannot be reversed by the court." *Id.* at 169.

Assuming without deciding that the Oregon Supreme Court would today affirm the proposition that an educational institution's decisions cannot be in breach of the institution's contract with its student unless such decisions are made in bad faith, in consequence of misconduct, or arbitrarily – elements not ordinarily required in a breach of contract action –  here there is evidence in the record from which a reasonable finder of fact could conclude that Western States' dismissal of Blincoe was arbitrary.  As noted above, for purposes of determining this motion for summary judgment only, this court finds that Dr. Harger agreed that Blincoe demonstrated expertise sufficient to pass BP IV, and promised to see what she could do about changing his grade so that he would pass the course.  It is undisputed that Dr. Harger nevertheless did not modify Blincoe's BP IV grade.  If Blincoe's performance earned him a

Page 14 - FINDINGS AND RECOMMENDATION

passing grade, and Western States nevertheless dismissed him for failing the course, such dismissal could reasonably be construed as arbitrary and in breach of contract.

Because there is necessarily a question of fact as to whether Western States' actions were arbitrary and in breach of its contract with Blincoe, this court recommends that Western States' motion for summary judgment on the merits of Blincoe's breach of contract claim be denied.

### III.   Specific Performance

Blincoe concedes that he has not yet passed the second portion of the OSCE, which serves as an exit examination for Western States students, and that his contract with Western States specifies that students must pass the second portion of the OSCE to qualify for a degree in chiropractic medicine. He nevertheless prays for an order requiring Western States to grant him a degree, a remedy he characterizes as specific performance of Western States' contractual obligations, on the ground that his passing score on the national chiropractic board exams should in some sense exempt him from Western States' academic requirements. Western States seeks partial summary judgment as to Blincoe's prayer for specific performance, arguing that a court may not properly order an educational institution to award an academic degree.

The Oregon courts have not considered whether specific performance can be an appropriate remedy in a dispute over the award of an academic degree. The leading Oregon case on the remedy of specific performance appears to be *Percy v. Miller*, 197 Or. 230 (1952), in which the court held that:

> a plaintiff coming into equity for specific performance must show not only that he has a valid, legally enforceable contract, but also that he has complied with its terms by performing or offering to perform on his part the acts which formed the consideration of the undertaking on the part of the defendant, or that he is ready, able, and willing to perform his obligations under the contract, in their entirety, and to do whatever has been made a condition precedent on his part.

Page 15 - FINDINGS AND RECOMMENDATION

*Percy v. Miller*, 197 Or. 230, 239-240 (1952).

This court need not make any determination as to whether the Oregon Supreme Court would join the courts of various other jurisdictions in which it has been determined that specific performance is unavailable to compel the award of an academic degree. Here, nothing in the record suggests that a passing score on the national chiropractic board exams could exempt Blincoe from Western States' requirement that he perform satisfactorily on the school's exit examination before becoming eligible for a degree. To the contrary, Western States' written policies specify that a passing score on the second portion of the OSCE is a mandatory requirement for the degree in chiropractic medicine. Because Blincoe has not completed the express requirements for the degree, as a matter of law he is not entitled to the purported specific performance he prays for.

In the event a finder of fact were to determine that Blincoe achieved a passing grade in BP IV, and Blincoe expressed himself willing to sit for Western States' exit examination, the question would arise whether Blincoe could be entitled to specific performance compelling Western States to permit him to sit for the exam. That question is not now before the court, and this court's determination that the specific performance prayed for in Blincoe's amended complaint is beyond the court's power to grant does not foreclose the possibility that such other specific performance might properly be granted.

For the foregoing reasons, this court recommends that Western States' alternative motion for partial summary judgment be granted as to the specific performance prayed for in Blincoe's amended complaint (#33), namely an order compelling Western States to award Blincoe a degree in chiropractic medicine.

**IV.     Motion to Strike**

Pursuant to Local Rule 56.1, a party's concise statement of material facts filed in support of a motion for summary judgment, or any response or reply thereto, must not exceed five pages. *See* L.R. 56.1(d).  In addition, all facts recited therein must be supported by citations to evidence. *See* L.R. 56.1(c)(1).  Blincoe's Response to Concise Statement of Material Facts is approximately eight pages long, and contains facts unsupported by citations to evidence. Western States moves to strike the entire response as overlong or, in the alternative, either to strike all pages in excess of five or to strike all unsupported allegations and deem all unsupported denials admitted.

Blincoe's response is clearly noncompliant with the applicable local rule.  There is no basis in the local rule or in applicable case law, however, for the sanctions requested by defendant; the ususal remedy in circumstances like these is either to grant leave to file an overlong response or to strike the response with instructions to refile it in more condensed form.

Here, Blincoe's noncompliance does not prejudice Western States, nor does it influence this court's findings or recommendations in any manner.  This court therefore grants Blincoe leave *nunc pro tunc* to file an overlong response to Western States' concise statement of material facts.  To the extent Western States' motion to strike addresses Blincoe's failure to support certain of the facts and denials with citations, the motion is denied as moot, in that this court's findings and recommendations do not rely on Blincoe's unsupported statements.

**CONCLUSION**

The evidence presented by Blincoe in response to Western States' motion for summary judgment is not strong, and is riddled with inconsistencies.  Nevertheless, when the evidence is

Page 17 - FINDINGS AND RECOMMENDATION

viewed in the light most favorable to him, Blincoe's breach of contract claim should survive Western States' summary judgment motion. This court cannot, however, for the reasons discussed above, grant Blincoe's request for conferral of an academic degree under any circumstances. Blincoe may seek an award of damages, but only if such damages can be proven to a reasonable degree of certainty. This court recommends denying defendant Western States' motion for summary judgment (#49), granting Western States' alternative motion for partial summary judgment as to Blincoe's prayer for an order compelling Western States to award Blincoe a degree in chiropractic medicine, and denying the motion for partial summary judgment in all other respects.

For reasons set forth above, this court additionally grants leave *nunc pro tunc* for Blincoe to file an overlong response to Western States' concise statement of material fact and denies Western States' motion to strike (#60) as moot.

## SCHEDULING ORDER

The findings and recommendations of the above Findings, Recommendation, and Order will be referred to a United States District Judge for review. Objections, if any, are due September 25, 2007. If no objections are filed, review of the Findings and Recommendation will go under advisement on that date. If objections are filed, a response to the objections is due

///

///

///

///

fourteen days after the date the objections are filed and the review of the Findings and

Recommendation will go under advisement on that date.

      Dated this 11th day of September, 2007.

                                        /s/ Paul Papak
                                        Honorable Paul Papak
                                        United States Magistrate Judge