IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EMMIS TELEVISION BROADCASTING
L.P.,

                Plaintiff,

v.

TRAVELCENTERS OF AMERICA, INC., and
TA OPERATING CORPORATION,

                Defendants.

CV. 06-998-PK

FINDINGS OF FACT &
CONCLUSIONS OF LAW

PAPAK, Magistrate Judge:

       This matter came on for trial on July 31, 2007, with a post-trial hearing on August 16, 2007. Having considered the parties' pleadings, the exhibits and testimony of witnesses, and the legal memoranda and oral argument of counsel, this court makes the following findings of fact and conclusions of law:

**FINDINGS OF FACT**

       1.       On July 12, 2005, an employee of defendants pumped over ten gallons of gasoline into the interior of an electronic news-gathering vehicle (the "ENG van") owned and operated by KOIN-TV (the "incident"), having negligently mistaken a cable port for the gas tank.

Page 1 - FINDINGS OF FACT & CONCLUSIONS OF LAW

2.      At the time of the incident, KOIN-TV was a division of Emmis Television Broadcasting, L.P., the plaintiff in this action.

3.      At the time of the incident, the ENG van was approximately three and one half years old, with approximately 42,000 miles logged on its odometer.

4.      Immediately prior to the incident, the ENG van, together with the equipment installed therein, but excluding the ENG van's compressor, generator, mast, and microwave transmitter, had a fair market value of $87,353.00.  Such amount represents 62.5% of the original purchase price of the vehicle less the original purchase price of the vehicle's compressor, generator, mast, and microwave transmitter.  The court finds, based on the evidence presented at trial, that the typical electronic news-gathering vehicle has a fair market value equal to 50% of its original purchase price after 3.5 years of use, but that the expected lifetime of the ENG van damaged by defendants' employee was 25-50% longer than that of the typical vehicle, warranting a 25% increase in fair market value.  The court relies upon the purchase price of the vehicle obtained by plaintiffs to replace the ENG van as a proxy for the original purchase price; the evidence presented at trial established that such price constituted a very close approximation of the original purchase price of the ENG van, less the value of the vehicle's compressor, generator, mast, and microwave transmitter.  The court does not place significant reliance on defendant's expert's estimation of the ENG van's value, due to flaws in the expert's methodology and significant issues with the "comparable" values the expert relied upon.

5.      Immediately prior to the incident, the electronic equipment and other items stored in the ENG van that were subsequently damaged by the gasoline and gasoline fumes had a fair market value of $40,620.00.  In arriving at this valuation, the court relies upon the valuation

offered by defendant's expert, less the value of equipment valued by the expert but not ultimately included in plaintiff's prayer for damages.

6. Following the incident, the ENG van and most of the equipment installed therein were damaged beyond repair by the gasoline and gasoline fumes.

7. Following the incident, of the mechanical equipment installed in the ENG van, only the compressor, generator, and mast could be salvaged for re-use, and all other mechanical equipment was without value for any purpose.

8. Following the incident, all of the electronic equipment installed in the ENG van was without value for any purpose.

9. Other than the chassis, transmission, and wheels of the ENG van, no parts of the ENG van had any salvage value following the incident.

10. The chassis, transmission, and wheels of the ENG van had a salvage value of $500.00 following the incident.

11. Following the incident, the manufacturer of the microwave transmitter that had been installed in the ENG van replaced the microwave transmitter free of charge, for reasons unrelated to the incident.

12. For eight months following the incident, plaintiff rented an ENG van at a rental rate of $8,000.00 per month pending the manufacture of a replacement vehicle.

13. Plaintiff incurred a $4,000.00 delivery charge in connection with the rental ENG van.

14. During the time plaintiff was renting an ENG van, plaintiff incurred $221.00 in necessary repair costs in connection with the rental ENG van.

15. Plaintiff incurred incidental costs of $5,928.09 as a result of the incident.

16. As a result of the incident, plaintiff was deprived of the services of its employee Rick Brown for approximately 60 hours, resulting in lost production time to plaintiff.

17. The reasonable value to plaintiff of the loss of use of plaintiff's employee's time is $1,972.77. The evidence in the record established that Brown's employer paid $2,630.36 in compensation and benefits in every two-week pay period. 60 hours constitutes 75% of full-time employment during a two-week pay period, and $1,972.77 constitutes 75% of Brown's bi-weekly compensation and benefits.

18. Defendants concede the question of their liability for their employee's negligence in causing the incident.

## CONCLUSIONS OF LAW

Under well-established Oregon law, where personal property has an ascertainable fair market value, the appropriate measure of damages for injury to that property is diminution of value, or the value of the property immediately before the injury occurred less the value immediately following the injury. *See*, *e.g.*, *Cutsforth v. Kinzua Corp.*, 267 Or. 423, 439 (1973) ("Oregon follows the general rule that the measure of damage to personal property is diminution of value or the difference between its value at the place immediately before and immediately after the injury") (citations, quotation marks, and internal modifications omitted); *Hayes Oyster Co. v. Dulcich*, 170 Or. App. 219, 228 (2000) ("Ordinarily the market value of the property meets the requirement of just compensation. . . . Of course, a party may always prove that there is no market for property . . . as a precondition to offering alternative methods of valuation") (citations omitted).

Defendants moved *in limine* to exclude evidence of damage premised on loss of work time by plaintiff's operations manager Rick Brown; the court took defendants' motion under

Page 4 - FINDINGS OF FACT & CONCLUSIONS OF LAW

advisement.  Oregon law permits award of damages for lost employee time where the plaintiff is able to establish "increased cost, lost earnings, lost production time or other lost benefits" in connection with the lost employee time.  *McKee Electric Co. v. Carson Oil Co.*, 70 Or. App. 1, 9 (1984).  Defendant's motion is therefore denied.

Defendants further moved *in limine* to exclude evidence and argument regarding $16,000 in damages for loss of use of the ENG vehicle during the two months immediately following the incident, on the ground that such damages were not included in plaintiff's responses to defendants' interrogatory requesting identification of the amount and description of all damages and expenses incurred as a result of the incident.  Plaintiff concedes that it failed to include the two months' loss of use in its response to defendants' interrogatories, but argues that the error was due to inadvertence, that it is otherwise entitled to the requested damages, and that defendants have not been prejudiced by the failure to identify the damages during discovery.  This court has authority, in its discretion, to "impose sanctions on a party for misconduct in discovery under its inherent power to manage its own affairs."  *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 106-107 (2d Cir. 2002), *citing Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) ("It has long been understood that certain implied powers must necessarily result to our Courts of justice from the nature of their institution, powers which cannot be dispensed with in a Court, because they are necessary to the exercise of all others") (internal quotation marks omitted).  Nevertheless, the evidence presented at trial suggests that plaintiff would have been entitled to the disputed damages absent its inadvertent failure to disclose the item in discovery, and that defendants suffered no prejudice in consequence of plaintiff's failure.  The court therefore denies defendants' motion.  However, the court orders that,

Page 5 - FINDINGS OF FACT & CONCLUSIONS OF LAW

for purposes of defendants' Rule 68 offer of judgment, this court's award of damages to plaintiff be treated as though reduced by $16,000.

Defendants further moved *in limine* to exclude testimony by three KOIN-TV employees as to the fair market value of the damaged ENG van. In fact, only one employee, Rick Brown, offered such testimony. Brown's testimony is clearly admissible to establish the value of the vehicle. *See* Fed. R. Evid. 701; *see also*, *e.g.*, *United States v. Polishan*, 336 F.3d 234, 242 (3d Cir. 2003). Defendants' motion is therefore denied.

Because defendants concede the question of negligence, the primary matter at issue in this dispute is the measure of damages. Based on the findings enumerated above, this court concludes that plaintiff is entitled to compensatory damages of $86,853.00 for the damage to the ENG van and its installed equipment, of $40,620.00 for the damage to the uninstalled equipment and other items stored in the van at the time of the incident, of $68,221.00 for loss of use of the ENG van and the damaged equipment, of $5,928.09 for incidental expenses caused by the incident, and of $1,922.77 for lost employee time resulting in lost productivity to plaintiff, or total money damages of $203,594.86.

Under Oregon law, it is appropriate to add pre-judgment interest to an award of damages "where (1) the exact amount of damages is either ascertained or readily ascertainable, and (2) the time from which the interest runs is easily ascertained." *School Dist. v. Mission Ins. Co.*, 58 Or. App. 692, 714 (1982) (footnote omitted in original), *quoting Krieg v. Union Pacific Land Res. Corp.*, 269 Or. 221, 234 (1974); *see also* O.R.S. 82.010(1)(a). Where pre-judgment interest is appropriate, it is awarded at the rate specified in O.R.S. 82.010(1).

Here, however, the "exact amount of damages" was neither ascertained nor readily ascertainable by reference to a generally recognized standard at any time pre-judgment. Instead,

Page 6 - FINDINGS OF FACT & CONCLUSIONS OF LAW

the amount of plaintiff's damages was determined through weighing the credibility of the lay and expert opinion testimony of the various witnesses at trial.  Award of pre-judgment interest is therefore inappropriate under Oregon law.

By contrast, 28 U.S.C. § 1961 governs the award of post-judgment interest on money judgments entered by federal district courts in civil cases.  That section provides, in pertinent part, that:

> Interest shall be allowed on any money judgment in a civil case recovered in a district court.  * * *  Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment.

28 U.S.C. § 1961(a).  Accordingly, plaintiff is entitled to post-judgment interest on the entirety of its money judgment.

## CONCLUSION

Based on the foregoing, this court concludes that defendants are liable to plaintiff in the amount of $203,594.86 plus post-judgment interest calculated in accordance with the provisions of 28 U.S.C. § 1961.  Plaintiff is additionally entitled to recover its costs reasonably incurred herein.  Judgment will be entered separately.

Dated this 27th day of September, 2007.

                                                                  /s/  Paul Papak  
                                                           Honorable Paul Papak  
                                                           United States Magistrate Judge